UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
CANON INC. and CANON U.S.A., INC.,        :
                                          :        14cv5462(DLC)
                Plaintiffs,               :
                                          :        OPINION & ORDER
                -v-                       :
                                          :
TESSERON LTD., INDUSTRIAL PRINT           :
TECHNOLOGIES L.L.C., and FORREST P.       :
GAUTHIER,,                                :
                                          :
                Defendants.               :
                                          :
------------------------------------ X

APPEARANCES

For plaintiffs Canon Inc. and Canon U.S.A., Inc.:

Joseph A. Calvaruso
Lisa T. Simpson
Richard F. Martinelli
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019

For defendants Tesseron Ltd., Industrial Print Technologies
L.L.C., and Forrest P. Gauthier:

Steven C. Schroer
FITCH EVEN TABIN & FLANNERY LLP
1942 Broadway, Suite 213
Boulder, CO 80302

Jared E. Hedman
FITCH EVEN TABIN & FLANNERY LLP
120 South LaSalle Street, Suite 1600
Chicago, IL 60603

Cary Kappel
DAVIDSON, DAVIDSON & KAPPEL, LLC
485 Seventh Avenue
New York, NY 10018

DENISE COTE, District Judge:

This dispute has its genesis in the defendants' assertion that they are entitled to receive patent licensing fees for high speed industrial-sized printing presses manufactured and sold by the Netherlands-based company Océ NV.  In 2010, plaintiff Canon Inc. ("CINC") purchased Océ and, in 2013, merged Océ's North American subsidiary with one of its own subsidiaries to create a new entity known as Canon Solutions America, Inc. ("CSA").  CINC asserts that, as a result of its validly issued sublicense to its subsidiary Canon U.S.A. ("CUSA"), the sales of Océ products in the United States that have been made since that merger -- products it contends are sold by CUSA to CSA -- are covered by CINC's own patent license agreement ("Agreement") with the defendants and that no additional licensing fees must be paid. The defendants disagree.

Earlier this year, this Court determined that the defendants wrongfully terminated the Agreement with plaintiff CINC.  The plaintiffs now move for partial summary judgment to obtain rights under the Agreement for CUSA.  Defendants, in turn, cross-move for a declaratory judgment that CUSA does not have such rights and that an infringement action is not barred. This Opinion finds that disputed issues of fact require a trial to determine whether CUSA holds a valid sublicense under the Agreement.

The defendants Tesserson Ltd. ("Tesseron"), Industrial Print Technologies L.L.C. ("IPT"), and Forrest P. Gauthier ("Gauthier") have also brought a motion to amend their answer to add the affirmative defense of statute of frauds.  That motion is denied as futile.  The reasons for each of these and other related rulings are set forth below.

## BACKGROUND

The following facts are undisputed, unless otherwise noted. Defendant Gauthier holds the patents to certain printer systems and technologies.  Gauthier is founder and sole owner of Tesseron, which at the time relevant to the dispute was the assignee of all right, title, and interest in his patents.  In 2005, Tesseron and CINC executed the patent licensing Agreement at issue here, effective December 31, 2005.

The Agreement extends the license to CINC affiliates who are not major competitors of Tesseron.  Section 2.02 grants CINC the right, "subject to compliance with the terms and conditions" of the Agreement, "to grant to any . . . Affiliates sublicenses under the licenses granted to it under this Agreement but without any right to sublicense further."  "Affiliate" is defined in Section 1.01 as "any corporation, company, partnership or other entity (a) which is controlled by or is in common control with Canon directly or indirectly through one or

3

more intermediaries as of the Effective Date" or "(b) which will be controlled by or under common control with Canon directly or indirectly through one or more intermediaries subsequent to the Effective Date and which as of the Effective Date is not a major competitor with respect to the [licensed patents]."  Section 2.02 further states that "Canon shall have no right to grant sublicenses to any person other than the Affiliates under this Agreement."

Two other provisions of the Agreement are also at issue in this motion practice.  Section 8.01 provides that CINC "shall not assign or transfer any of its rights, privileges or obligations hereunder without the prior written consent of" Tesseron.  And Section 2.02 states that Tesseron "agrees not to assert any of its rights under the Licensed Patents against any direct or indirect suppliers of Canon and its Affiliates including, without limitation, Electronics for Imaging Inc." The Agreement is governed by the laws of the State of New York.

Plaintiffs offer evidence that CINC issued a sublicense to CUSA during a meeting between a representative of CINC, Shinji Sakai ("Sakai"), and a representative of CUSA, Hideki Sanatake ("Sanatake"), in Tokyo on January 31, 2006.  The only other attendee of this meeting has died.  Plaintiffs acknowledge that no documents or other contemporaneous corroborating evidence can

been located for this oral agreement.  The defendants dispute
that such a sublicense was issued in 2006 or, if issued, that it
could validly convey licensing rights.

Plaintiffs filed the instant suit in this Court on July 21,
2014.  Their complaint asserts six claims: breach of contract
for improper termination; breach of contract for improper
assignment; a declaratory judgment that CUSA holds a valid
sublicense under the Agreement; a declaratory judgment that
IPT's patent rights are exhausted with respect to CSA; tortious
interference with contract; and breach of the Agreement's forum
selection clause.

On January 26, 2015, plaintiffs filed two motions for
partial summary judgment.  One motion concerned their breach of
contract claim for improper termination, and it was granted in
June.  See Canon Inc. v. Tesseron Ltd., No. 14cv5462 (DLC), 2015
WL 3884220, at *5 (S.D.N.Y. June 24, 2015).  Familiarity with
that decision is assumed.  The second concerns the plaintiffs'
two claims for declaratory judgment and is addressed in this
Opinion.  Defendants cross-moved for summary judgment on all
three claims, and the motions were fully submitted on March 16,
2015.  Fact discovery closed on April 30, 2015, and the parties
were permitted to supplement the record for these motions.  The
parties completed supplementing the record on June 19.

Meanwhile, on June 12, defendants moved to amend their Answer to add a statute of frauds defense.  That motion was fully submitted on July 14.

## DISCUSSION

The defendants' motion to amend will be addressed first. The cross motions for summary judgment will then be addressed.

## I. Motion to Amend

Federal Rule of Civil Procedure 15 instructs that "[a] court should freely give leave [to amend] when justice so requires."  Fed.R.Civ.P. 15(a)(2); accord Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013).  While this rule is founded on a "policy in favor of granting leave to amend," Jaser v. N.Y. Prop. Ins. Underwriting Ass'n, 815 F.2d 240, 243 (2d Cir. 1987), a motion to amend may be denied for "futility, bad faith, undue delay, or undue prejudice to the opposing party." Doninger v. Niehoff, 642 F.3d 334, 357 (2d Cir. 2011) (citation omitted).  "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)."  Lotes Co. v. Hon Hai Precision Indus. Co., 753 F.3d 395, 416 (2d Cir. 2014) (citation omitted).  To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

Defendants seek to amend their Answer to assert a defense relying on the New York statute of frauds.  See N.Y. Gen. Oblig. Law § 5-701(a)(l).  Specifically, they argue that any sublicense granted to CUSA is invalid because it constituted an oral contract that was never reduced to writing.  Plaintiffs oppose the amendment as futile.

"The law is clear that . . . the Statute of Frauds is a personal defense which cannot be interposed by a third party." Dante v. 310 Associates, 503 N.Y.S.2d 786, 788 (1st Dept. 1986); accord Vincent v. Seaman, 544 N.Y.S.2d 225, 227 (3d Dept. 1989); Felicie, Inc. v. Leibovitz, 412 N.Y.S.2d 625, 627 (1st Dept. 1979); see also Edwards Mfg. Co. v. Bradford Co., 294 F. 176, 181 (2d Cir. 1923) ("[T]he benefit of the statute of frauds as a defense is entirely personal, and cannot be set up by third parties." (citation omitted)).  Because the purported sublicense would have been a contract between plaintiff CINC and CUSA, defendants may not assert the statute of frauds as a defense.

Defendants acknowledge that New York law generally forbids third parties from asserting a statute of frauds defense.  They argue that they nevertheless have standing to assert it here because CINC's right to sublicense is entirely dependent on and arises from Tesseron's original grant of a license to its

patents in the Agreement.[1]  Despite this connection to the sublicense, Tesseron remains a third party to that contract.

Since defendants are third parties to any purported CINC-CUSA contract, they cannot assert the "personal defense" of the statute of frauds, and the motion to amend is denied as futile. Because the motion is denied on this ground, it is unnecessary to address the parties' arguments on the merits of the statute of frauds defense.

## II. Summary Judgment Motions

The parties have cross moved for summary judgment on the plaintiffs' two claims for a declaratory judgment.  The plaintiffs seek a declaration that CINC granted CUSA a valid sublicense, and that the doctrine of patent exhaustion covers the sales of Océ products made under that sublicense, rendering them immune from charges of patent infringement by the defendants.

Summary judgment may not be granted unless all of the submissions taken together "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  "There is no

---

[1] The cases defendants cite in support of their claimed standing to assert the statute of frauds as a defense -- one from New York and the other from Mississippi -- are inapposite and unpersuasive.  Brockport Developers, Inc. v. 47 Ely Corp., 369 N.Y.S.2d 601 (N.Y. Sup. Ct. 1975); Martin v. Texaco, Inc., 304 F. Supp. 498 (S.D. Miss. 1969).

genuine issue of material fact where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Fabrikant v. French, 691 F.3d 193, 205 (2d Cir. 2012) (citation omitted).  The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party.  Eastman Kodak Co. v. Image Technical Servs.,Inc., 504 U.S. 451, 456 (1992); Holcomb v. Iona Coll., 521 F.3d 130, 132 (2d Cir. 2008). "[W]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented."  Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004) (citation omitted). If parties have cross-moved on the same claim, courts "evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Children First Found., Inc. v. Fiala, --- F.3d ---, 2015 WL 2444501, at *4 (2d Cir. May 22, 2015).

Once the moving party has asserted facts sufficient to show that the non-movant's claims or affirmative defenses cannot be sustained, the opposing party must "set out specific facts

showing a genuine issue for trial," and cannot "rely merely on allegations or denials" contained in the pleadings. Fed.R.Civ.P. 56(e); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment," Ridinger v. Dow Jones & Co. Inc., 651 F.3d 309, 317 (2d Cir. 2011) (citation omitted), as are "mere speculation or conjecture as to the true nature of the facts." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes over material facts -- "facts that might affect the outcome of the suit under the governing law" -- will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**A. Validity of Sublicense to CUSA**

Plaintiffs and defendants first move for summary judgment on the issue of whether CUSA was validly granted a sublicense. In so doing, they offer different interpretations of the Agreement and debate the sufficiency of the evidence plaintiffs have adduced to show the creation of a sublicense. As explained below, while the Agreement permitted CUSA to grant a sublicense without prior approval from Tesseron, whether CUSA actually conveyed such a sublicense to CUSA cannot be determined as a matter of law.

Under New York law, "agreements are to be construed in
accordance with the parties' intent," "the best evidence" of
which "is what they say in their writing." In re World Trade
Ctr. Disaster Site Litig., 754 F.3d 114, 122 (2d Cir. 2014)
(citation omitted).  "Accordingly, a written agreement that is
complete, clear and unambiguous on its face must be enforced
according to the plain meaning of its terms." Id. (citation
omitted).  Thus, "[a]t the outset, the court must determine
whether the language the parties have chosen is ambiguous . . .
." Gary Friedrich Enterprises, LLC v. Marvel Characters, Inc.,
716 F.3d 302, 313 (2d Cir. 2013).

"A contract is unambiguous when the contractual language
has a definite and precise meaning about which there is no
reasonable basis for a difference of opinion." Keiler v.
Harlequin Enterprises Ltd., 751 F.3d 64, 69 (2d Cir. 2014).  "By
contrast, ambiguity exists where a contract's term could
objectively suggest more than one meaning to one familiar with
the customs and terminology of the particular trade or
business." Id.  "Whether a contract is ambiguous is a question
of law." Id.  But ambiguity does not arise merely by virtue of
the fact that the parties volunteer different definitions. Law
Debenture Trust Co. of New York v. Maverick Tube Corp., 595 F.3d
458, 467 (2d Cir. 2010).  For instance, the proposal of an

interpretation that "strains the contract language beyond its reasonable and ordinary meaning" does not create ambiguity where none otherwise exists.  Seiden Associates, Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992) (citation omitted).  "The existence of an ambiguity is to be ascertained from the face of an agreement without regard to extrinsic evidence." In re World Trade Ctr. Disaster Site Litig., 754 F.3d at 122 (citation omitted).  In interpreting a contract under New York law, "words and phrases . . . should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." Olin Corp. v. Am. Home Assur. Co., 704 F.3d 89, 99 (2d Cir. 2012) (citation omitted).

## 1. Prior Written Approval of Sublicense

Defendants contend that two sections of the Agreement -- Section 2.02 and Section 8.01 -- operate together to require that CINC obtain prior written consent from Tesseron before granting a sublicense.  Read as a whole, the Agreement does not require CINC to obtain prior written consent from Tesseron before it extends a valid sublicense to another entity.  The Agreement is unambiguous in this regard.

Section 2.02 of the Agreement governs sublicensing.  It provides to CINC the right to grant sublicenses to "Affiliates," and that such sublicenses automatically expire if and when

sublicensees cease to be "Affiliates."  It says nothing about obtaining prior written consent from Tesseron, and there is no indication that any sublicensee approval process is contemplated, here or elsewhere in the document.

Section 8.01 requires written consent from Tesseron in only limited circumstances.  Such consent is required if CINC "assign[s] or transfer[s] any of its rights, privileges or obligations" under the Agreement.  In creating the sublicense, CINC did not assign or transfer any of its rights under the Agreement.  It retained all of its rights, including the right to grant sublicences.  In contrast, and reading Section 8.01 in the context of the entire Agreement, if CINC had, for instance, sought to transfer or assign the right to create a sublicense, then Section 8.01 imposes upon CINC the obligation to obtain prior written consent from Tesseron.

This reading of Section 8.01 is supported by another provision in the Agreement.  Section 7.04 speaks of "all licenses and rights granted to Canon hereunder," making a distinction between a license and the rights created by the Agreement.  Read in its entirety, therefore, the Agreement does not require CINC to obtain prior written consent from Tesseron to grant a sublicense.  Accordingly, this portion of defendants' cross-motion for summary judgment on the issue of the validity

of the sublicense is denied.

### 2. Establishing a Valid Sublicense

The parties also dispute whether the plaintiffs have shown as a matter of law that CINC validly granted a sublicense to CUSA.  Plaintiffs have introduced the affidavits of and deposition testimony from Sakai and Sanatake to show the grant of the sublicense, but acknowledge that no written documentation or any other contemporaneous corroborating evidence of the sublicense exists.  Plaintiffs argue that undisputed evidence on the record conclusively establishes the formation of a valid contract as a matter of law.

The plaintiffs are not entitled to summary judgment on this issue.  The defendants have shown that there are disputed issues of fact that may only be resolved at trial.  The defendants point to several alleged inconsistencies in the affidavits and deposition testimony.  A jury would be entitled to reject the testimony from these witnesses even if it were uncontradicted by any other witness.  "[W]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." Sec. Ins. Co. of Hartford, 391 F.3d at 83 (citation omitted).

### 3. Consideration and Definiteness

Defendants present two more arguments in support of their summary judgment motion to invalidate the sublicense.  They argue that, even assuming there was valid offer and acceptance of a sublicense, no valid sublicense would exist as a matter of law because there was no consideration given for the sublicense and the oral agreement between the two corporate representatives was insufficiently definite.  Defendants' motion for summary judgment on these grounds is denied.

"Under New York law, a binding contract can be formed without the execution of a written agreement." Delaney v. Bank of Am. Corp., 766 F.3d 163, 171 (2d Cir. 2014).  Valid contracts, however, require "an offer, acceptance, consideration, mutual assent and intent to be bound." Leibowitz v. Cornell Univ., 584 F.3d 487, 507 (2d Cir. 2009) (citation omitted).  In addition, a proponent of an oral contract "must demonstrate that the terms of any agreement are definite." Delaney, 766 F.3d at 171.  An oral agreement may be indefinite if it "lack[s] any actual terms as to the amount, form, and timing of payment of any compensation, and include[s] no methodology or custom providing for the determination of the same." Id. (citation omitted).  Nevertheless, New York courts "ha[ve] not applied the definiteness doctrine rigidly." 166

15

Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp., 78 N.Y.2d 88, 91 (1991).  "Before rejecting an agreement as indefinite, a court must be satisfied that the agreement cannot be rendered reasonably certain by reference to an extrinsic standard that makes its meaning clear."  Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp., 74 N.Y.2d 475, 483 (1989).

Defendants' consideration argument fails because the absence of consideration is an affirmative defense to which only parties to the contract have recourse.  Nash v. Duroseau, 835 N.Y.S.2d 611, 612 (2d Dept. 2007); Cnty. of Tioga on Behalf of Tioga Cnty. Solid Waste Dist. v. Solid Waste Indus. Inc., 577 N.Y.S.2d 922, 924 (3d Dept. 1991).  Defendants offer no authority to support their contention that they may assert the absence of consideration to invalidate the contract between two other entities.

Defendants are also wrong in arguing that the alleged sublicensing agreement was indefinite as matter of law.  Sakai and Sanatake both testified that they agreed that the alleged sublicense would "follow the terms of the original license agreement" and cover the "entire scope" of that Agreement. Under New York's "flexible" definiteness standard, this "reference to an extrinsic standard" may render the alleged agreement sufficiently definite to create an enforceable

contract.  <u>Cobble Hill</u>, 74 N.Y.2d at 483.  The defendants may, of course, pursue their argument regarding the indefinite nature of the agreement at trial.

**B. Patent Exhaustion**

The parties each seek summary judgment with respect to the plaintiffs' claim for a declaration that Tesseron and IPT's patents are exhausted with respect to CSA.  They do not disagree about the underlying legal principle that must be applied.  "The longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented item terminates all patent rights to that item."  <u>Quanta Computer, Inc. v. LG Electronics, Inc.</u>, 553 U.S. 617, 625 (2008).  Because sales must be "authorized" for this doctrine to apply, both parties acknowledge that the claim for declaratory judgment on patent exhaustion hinges, at least in the first instance, on whether CUSA was a valid sublicensee.  Because summary judgment has not been entered on that issue, the motion and cross-motion for summary judgment on the patent exhaustion claim are both denied.

17

**CONCLUSION**

Defendants' June 12 motion to amend is denied.  Plaintiffs' January 26 motion and defendants' February 20 cross-motion for summary judgment on the two claims for declaratory judgment are denied.

Dated:     New York, New York
           July 24, 2015

                                    _____
                                             DENISE COTE
                              United States District Judge